IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TIMOTHY WILSON                                                                                    PLAINTIFF

v.                          Civil No. 5:16-cv-05247

DR. ROBERT KARAS                                                                                 DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights case filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Varner Unit of the Arkansas Department of Correction (ADC). The events that are the subject of this case occurred while Plaintiff was housed at the Washington County Detention Center (WCDC). Specifically, Plaintiff maintains he was denied adequate medical care in violation of the United States Constitution.

Defendant filed a Motion for Summary Judgment (ECF No. 28). A hearing was held on July 6, 2017, to allow Plaintiff to testify in response to the Motion. Plaintiff appeared by video from the ADC. At the conclusion of the hearing, the Motion was taken under advisement pending preparation of this report and recommendation.

### I. BACKGROUND

The period of incarceration at issue in this case began with Plaintiff's arrest and booking on June 23, 2016, and ended when he was released on bond on September 15, 2016. (ECF No. 30-2 at 2-3).[1] Plaintiff was in pretrial status.

---

[1]For ease in locating cited documents, all citations are to the CM/ECF document and page numbers.

Plaintiff asserts a denial of medical care claim against Dr. Karas in his personal capacity only. (ECF No. 1 at 7-8). From January 1, 2016, to present, Karas Correctional Health has provided all medical care in the WCDC. (ECF No. 30-1 at 3); (ECF No. 30-9 at 1). Dr. Karas is the jail doctor. (ECF No. 30-9 at 1).

By affidavit, Dr. Karas states he was not personally involved in Plaintiff's medical care. (ECF No. 30-9 at 1). Instead, Dr. Karas asserts that Plaintiff's care was directed by Nurse Practitioner Kelly Oliver. *Id.* Dr. Karas opines that the decision "to order additional fiber for [Plaintiff] was medically appropriate and appears to have solved the problem he suffered." *Id.* at 2.

Plaintiff testified that for a number of years he has had an issue with intestinal bleeding and his doctor recommended adding fiber to his diet. According to Plaintiff, his doctor told him that he had lesions that ruptured when he had bowel movements. Plaintiff testified that prior to his incarceration, he took three over-the-counter chewable fiber tablets each day.

Plaintiff testified, during his deposition, that if he failed to have the supplemental fiber for a week to a week-and-a-half, he would have a flare up and the bleeding would start. (ECF No. 30-8 at 9). Within four to five days of taking the fiber supplement, everything returned to normal. (ECF No. 30-8 at 21).

Plaintiff testified that when he was booked in, he informed the officer that he took multi-vitamins and a fiber supplement due to his intestinal issues. Plaintiff indicated the booking officer advised him to inform the medical staff about the supplements. No notation was made on the medical questionnaire about the supplements. Plaintiff stated that he did not take any prescription medication.

Plaintiff testified he advised the nurse of his need for fiber and she indicated she would check his records. A "couple" of weeks went by and Plaintiff asked about the fiber supplement again. This time, he was informed that he needed to submit a written request via the kiosk. According to Plaintiff,

by the time he got the nurse to put in an order for a fiber supplement for him, he was having bloody bowel movements.

The records indicate the following:

•6/24/2016-- Plaintiff submitted a request stating he was lactose intolerant and had irritable bowel syndrome (IBS). Plaintiff indicated any help would be appreciated and he did not know if the doctor could give medicine to help with those conditions. Plaintiff was advised he needed to provide his doctor's information so that his medical records could be used to verify the medical conditions (ECF No. 30-3 at 1);

•6/27/2016-- Plaintiff provided the requested information (ECF No. 30-3 at 2);

•7/19/2016--Plaintiff requested a doctor visit. An officer asked the reason Plaintiff wanted to see the doctor. Plaintiff did not respond;[2]

•7/21/2016-- Plaintiff submitted a request noting that prior to his arrest he had been supplementing his diet with fiber chews to help regulate his IBS and prevent him from having bloody stools. After a month with no additional fiber, Plaintiff stated he was back to having "severe bloody bowel movements." He said the issue needed to be addressed. Plaintiff was placed on sick call (ECF No. 30-3 at 3);

•7/22/2016--Nurse Regina Walker noted Plaintiff was requesting either fiber pills or an increase in fiber in his diet. She added Plaintiff to the doctor call list (ECF No. 30-4 at 5);

•7/24/2016-- Nurse Practitioner Oliver ordered Metamucil to be taken as directed on the bottle (ECF No. 30-4 at 4);

•8/3/2016--Plaintiff submitted a request noting that the Metamucil was still not on the medication cart. He stated he had been given fiber pills a few times which was fine with him. He also noted he had not seen the doctor yet even though he said he was having severe bloody bowel movements. In response, Plaintiff was told the Metamucil was just put on the cart and to ask the nurse for the white bottle (ECF No. 30-3 at 4-5).

According to Defendant, Plaintiff refused his morning dose of Metamucil on September 4th-5th, 7th, and 13th-14th, 2016. (ECF No. 30-4 at 7-8). Plaintiff testified he never refused the fiber

---

[2]The request is listed in the Defendant's statement of facts but does not appear in the exhibit containing Plaintiff's requests. (ECF No. 30-3). This request is discussed in Plaintiff's deposition but the deposition exhibits are not attached. (ECF No. 30-8).

supplement or told anyone he would not take it. If he was out in the yard or out to court, Plaintiff stated the medication record was marked that he refused it.

Plaintiff never saw Dr. Karas. Plaintiff testified that Dr. Karas was the head of the company and that anyone under him was subject to his authorization.

Plaintiff maintains his request for a fiber supplement was not handled properly. Plaintiff testified that either through mis-communication or because of a failure to follow through, he did not have a fiber supplement from June 23, 2017, until July 26, 2017. Plaintiff also believed he should have been seen by the doctor for the intestinal bleeding.

## II. SUMMARY JUDGMENT STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record,

so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

Defendant maintains he is entitled to judgment in his favor for the following reasons: (1) he was not personally involved in Plaintiff's medical care; (2) Plaintiff was not subjected to deliberate indifference to his serious medical needs; and (3) he is entitled to qualified immunity.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

"In order to state a cognizable [denial of medical care] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). The Eighth Circuit applies the deliberate indifference standard

to both pretrial detainees and convicted inmates. *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017).[3]

"Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)(citation omitted). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Taylor v. Bowers*, 966 F.2d 417, 421 (8th Cir. 1992).

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility). Here, there is simply no suggestion that Dr. Karas was aware of Plaintiff's intestinal issues or knew he was having problems getting a fiber supplement. Dr. Karas is entitled to summary judgment on the individual capacity claim.

---

[3] In *Ryan*, the Eighth Circuit applied the deliberate indifference standard to a denial of medical care claim brought by a pretrial detainee. In a footnote, it stated it was unnecessary to decide whether *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015), applied to the deliberate indifference claims at issue in the case. In *Kingsley*, "the Supreme Court rejected analysis of a defendant's subjective state of mind in excessive force cases and concluded 'the appropriate standard for a pretrial detainee's excessive force claim was solely an objective one.'" *Ryan*, 850 F.3d at 429 n.3 (*quoting Kingsley*, 135 S. Ct. at 2472-73). This Court will follow Eighth Circuit precedent and apply the deliberate indifference standard to this denial of medical care claim.

Moreover, even if the Court assumes for purposes of this motion that Dr. Karas did have some personal knowledge about Plaintiff's intestinal issues, the claim would still fail. The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the summary judgment record. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). There is no such evidence in the record. Additionally, Plaintiff has not pointed to any evidence of intentional delay. *Fourte v. Faulkner County, Ark*, 746 F.3d 384, 390 (8th Cir. 2014).

Having found that the facts do not make out a constitutional violation, Defendant is entitled to qualified immunity. See, e.g., Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

## V. CONCLUSION

For the reasons stated, I recommend that Defendant's Motion for Summary Judgment (ECF No. 28) be **GRANTED** and this case **DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of November 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE